Good morning. My name is Robert Kraft. I'm representing Joseph Lartz in this case. In Robitsky v. Canmar Reading and Dates at 1-11-Fed3-658, the Ninth Circuit held that the determination of whether a deck is unreasonably slippery is a question of fact for the jury to determine in light of all the evidence presented, and the Court cited Dempsey v. Mack Towing, Inc. in the Eleventh Circuit 1989 case for that proposition. The evidence before the District Court on this summary judgment motion on the question of whether the deck that Mr. Lartz slipped on was unreasonably slippery was as follows. First, there was three to four inches of snow and ice on the deck of the barge. Second, Mr. Lartz's deposition stated that, quote, my feet both shot out from underneath me. Third, his affidavit stated the location of the slip was unreasonably slippery in that I was unable to maintain my footing despite walking in a deliberate, cautious, and careful pace. Does that mean you can never get summary judgment in a slip-and-fall? It means that where there is evidence that the surface in which you slipped is difficult to walk on. And most people slip because there's something slippery, so. Yes, but the evidence in this case indicates that he slips on ice, and the evidence showed that there were prior slips on ice. The master testified that he had slipped on ice. The master testified that he knew it was a hazard. Crowley listed in his health, safety, and environmental plan that it was a potential hazard. So every slip-and-fall in Prudhoe Bay is a question for the jury? Is that correct? Well, if you have the employer list as a hazard, ice, you have the master testify that he knows it's a danger to semen, and you have the master testify that he himself had fallen on ice, a reasonable juror can conclude that walking and working on ice is a danger and is likely to result in a slip-and-fall. The master knows that. I mean, that's almost self-evident. I think that's what the district court was reacting to. When you're in an icy environment, obviously you're going to have ice. So the question is, as you said, the standard is whether it's unreasonably slippery. Not whether it's slippery, but whether it's unreasonably slippery. So what beyond the fact that in a cold environment where there is moisture, a sub-freezing, sub-zero, or sub-freezing, anyway, environment, what more is there here for the jury to take into account other than the fact that, predictably, on a ship or a barge in water in Prudhoe Bay has ice on the deck? And everybody knows that it's hazard. I mean, I moved to Washington from L.A. a few years back, and I knew right away that if I walked on ice, I might slip. And I hadn't grown up in an icy environment. Let me answer your question. If you wake up on a January morning and you live in Seattle, and the walkway from your front door to the sidewalk is covered with ice, and you have guests coming over at noon, a reasonable person is going to get out and shovel the walkway. But, yeah, but that's not quite the proper analogy. This isn't just a guest. This is somebody who is working in that environment. But in this case, the barge was moored to the dock at 6.20 in the morning, and there was 5 hours and 40 minutes time where there was nothing urgent going on, and there was ample time for Fisk, the engineer, or Larch, if he had been called out on overtime, to go out and shovel the snow on the barge. But when in that 5-hour time frame would he have shoveled and cleared it to make sure that at the time of cast-off, there wouldn't be ice on the deck, any ice? No risk of slipping at all. I'm sorry, I didn't hear that. No risk of slipperiness at all. In other words, you're saying, well, there's a 5-hour window, but this is a wet, freezing condition, is it not? So if I have my, to take your analogy in Seattle, if I have guests coming for midday tea, and I get up, whatever it's 5-hour time frame, I clear the walkway in the morning, but by the time my guests arrive, it's still slippery. Have I violated my duty to my guests? Don't I have to clear it approximately ahead of the time I'm going to assign anybody to go out, or somebody's going to walk on the walkway? If you know that your guests are coming at noon, then it's your responsibility to clear the walkway such that the pathway is reasonably safe. I understand it, but you're positing that because there was a 5-hour window, and I'm saying, let's suppose that at the beginning of the 5-hour time frame, right at the get-go, they cleared the deck, but by the time Mr. Lartz was asked to go, or directed to cast off, there had been a reform, there was still a new layer of ice had formed on the deck. Would you not be arguing that they should have cleared the walkway, even under this circumstance? Well, they knew they were going to cast off at noon. They could have directed Fisk and Lartz out at 11 o'clock or at 11.30 to clear the walkway. And they knew when they were going to be casting off the barge? Of course they did. At a scheduled time. The master is the sole decider of when they cast off. He could have delayed. He testified. I just want to take your hypothetical and understand what you're asking us to let go of the jury, because what I see is a barge that's got ice on it, okay? Everybody, that's sort of an innate condition under the circumstances. So now there's going to be a point in time during the day where they're going to cast away from the dock. So the issue is it not, whether or not, however long they had before the act of casting off, sending somebody out, that they should have cleared the walkway at that point, before somebody walked on it. And it could have been Lartz himself or somebody should have cleared it at that point, not five hours earlier in the morning if that would have resulted in a re-icing condition. And that is one of the options that we presented to the district court. What they could have done was delayed the departure of the barge and sent Lartz and Fisk out at noon to clear the walkway. What they did, Lartz's shift begins right at noon. If you look at the vessel log, the barge departs right at noon. So Lartz has to go out and cast off the lines right at noon. The master could have delayed the departure for a half hour, sent Fisk out on overtime with Lartz to clear the walkway, allowing a safe path to the lines to be cast off. The master did none of these things. The master knows it's a danger. He knows it's a hazard. And he wants to get out of there at 12 o'clock. Help me. Are you ñ did you move for summary judgment? No. You want ñ so aren't you overstating? Don't you really mean that there's a triable question as to whether they should have done this? That's my argument. The question ñ the Robiski case that the question of unreasonably slippery deck is a question of fact. And there is an issue here as to whether an icy deck is unreasonably slippery. What is more slippery in this world than ice? If ice is ñ may I say this, that if the court is to affirm the district court, then the rule in the Ninth Circuit would be that ice is, as a matter of law, not unreasonably slippery. And the rule would also be, I believe, that vessel owners working in Alaska have no duty to clear ice from their vessels despite the fact that they know it's a hazard and despite the fact that they have the means and the tools and the people to clear ice. And that should not be the law. It's inconsistent with past cases. And I will ñ I want to refer the Court to a 1939 Supreme Court case which I refer to often. It's Saccone Vacuum Oil Company v. Smith at 305 U.S. 424, which referred to the Jones Act as remedial legislation for the benefit and protection of semen. And that's how the courts view the Jones Act. The Ninth Circuit has also held that courts, quote, ìcourts should exercise special care in considering summary judgment in Jones Act cases which require a very low evidentiary threshold for submission to a jury.î And that's from Lies v. Feral Lines, Inc. and also Martinez v. Korea Shipping Corp., which are cited in my brief. Now, if you have a person who is walking on an icy surface with deliberate due care and caution and both his feet shoot out from under him, and if you have a master who himself has slipped on ice, and you have a Ninth Circuit rule that the question of unreasonable slipperiness is a jury question, this case should go to a jury on that question. All right. Counsel, you have about five seconds left. I'll reserve my time. Thank you. Good morning, Judge Schroeder, Judge Graber, and Judge Fischer. Good morning. My name is ñ He has a certain ring to him. My name is Vince Larson, and I'm, of course, representing the defendant, Crowley Marine Services, the appellee. I have with me today my associate who is making his first appearance in court since he was just admitted to the bar recently, Bill West. Your Honor, there is very little disagreement about either the law or the facts in this case. So we should just enter judgment or summary judgment right now, then? Summary judgment has been entered, and all you have to do is affirm it. Counsel, there was ñ there is in the health and safety plan of your client a statement that ice and snow present a hazard and that they should be cleared when possible. Absolutely. And that all working surfaces shall be kept clear. This was a morning, I take it, when it was not currently snowing. So at least there is evidence. What the record shows is that there had been snow during the preceding 24 and 48 hours. It did not say that either was or was not snowing during that shift. But that's a permissible inference from what's in the record. And I guess I'm baffled as to why that doesn't present a jury question about whether clearing in accordance with the safety rules that were established wasn't a perfectly feasible alternative that might have prevented this injury, or at least that a jury could so find. Yes, Your Honor. One answer to that is that the counselor testified that because of the way in which that dock and that bay faces the open Arctic Ocean, faces toward the east, and the prevailing wind that day was from the east, as shown in the logs, that there is constantly seawater splashing up over the deck. And that that seawater freezes. As the master testified, and as we all know, when the temperature drops below freezing, it's going to freeze. He also testified that he thought there was only sludge and not ice. And so there's all kinds of sort of facts. On the one hand, he says, well, you can't help it. It's always ice. And on the other hand, he says, well, there wasn't any ice, so this is all wrong anyway. I guess I don't see how that can be resolved. I think if you look carefully at his testimony and the import of it, what he's saying is that if there was three to four inches of a solid sheet of ice, then they couldn't work. He said that. But he said with putting salt on it, it tends to break that up and it becomes slush, which also can freeze. And as both he and the other crew members testified, it's virtually impossible to keep up with it at that point, because the accumulation. But the master knows when he is going to cast off the board, correct? Yes, indeed. All right. So what is what is there that prevents him from saying, OK, this is we can only we can't keep up with it all day, but we're going to now or, you know, we're within 20 minutes of casting off. So let's salt the walkway. Make it in a slushy. We've mitigated the slipperiness. Let me finish. Yes. And prepare not absolutely perfect slip slip free conditions, but mitigate the slipperiness. So it's not unreasonably slippery. And then rely on Larson's own self-preservation instincts to add to the care and then reduce the risk. Why wouldn't that be a perfect? The answer to that is that there indeed was not anything that prevented the master from giving such an order had he felt that it was necessary. However, the answer is that the deckhand has the responsibility of going out there with all the members of the crew and reporting anything that is. Who has the responsibility for deciding whether or not the barge should be turned loose, be unmoored? And didn't didn't didn't Attaway. This is what one thing that troubles me. Attaway, I thought, said he's the captain, the master. He said if there were ice where my men couldn't work, then I shouldn't have turned the barge loose. Yes. And that is exactly right. And the fact is that the whatever was there did not prevent the worst going on. It seems to me there has to be a question of fact there, because what Mr. Martz is saying is there was three to four inches of ice. What Mr. Attaway says is, as he remembers the deck, it was merely covered with slush. And but if it had been covered with ice, it would have been one could say unreasonably dangerous. He shouldn't have let the barge go. So isn't there isn't there an issue of fact about what the surface even was that day? I think his statement was if it was covered with ice to the point where we couldn't work, then, of course, we would stop. But it seems to me there's an issue of fact as to whether it was or wasn't even covered with ice. Mr. Martz says yes. Mr. Attaway says he remembers only slush. And so and if there's only slush, then presumably your client should win. But we don't know that. I think, Your Honor, the question of whether the slush there had actually turned to a frozen surface is something that only the man on the scene could tell. The jury needs to evaluate that. Pardon? The jury needs to evaluate that. Well, Mr. Martz was the man on the scene, and he had the duty. I mean, let's face it. Mr. Martz also has responsibilities and duties. It's not only the master. That's still a factual question under Rabitsky. Well, Your Honor, if I could just address Rabitsky for just one moment since counsel opened his argument with that case. All right. I think it's clear that. I'm hoping your response will address my question, whatever it may have been. The Rabitsky case, if you look at the facts, was not just a question of a slippery condition. There was an open, unguarded hatch in an area where the man was required to work part of the time with his back toward the hatch. There was very cramped space. And the Court noted all these factors. And then said, in light of all the evidence, the matter must go to the jury. We submit that in this case, there is no evidence on which a reasonable person could conclude that the master was negligent or that the vessel was unseaworthy. This is simply a common condition. One of the things that we have to keep in mind here, Your Honor, is that the area where Mr. Lartz was walking and working is not a designated pathway, walkway, sidewalk, gangway. It is part of the open, flat area of a barge, which is two-thirds the size of a football field. Think about that for a moment. It's 200 feet in length. It's approximately 70 feet wide. That's almost two-thirds of the size of a football field. And we're being asked to clear all snow and ice from that? If you were out, if the barge had been out in the middle of nowhere and some necessary thing had to take place on the deck, I think your argument would be more compelling. But there's a judgment call here as to when you unmoor or whatever the proper word is, when you take those ropes away so that the barge can be set loose. And that's what troubles me here, because there were some options here, it appears. The work was proceeding as normal. Mr. Lartz had his normal duties. Part of his duties were to go out, and if there was any snow or ice out there, to cope with it. All the men. This is a four-man crew. Only one more person than is sitting at the bench today. It's not as though this is some other. We're arguing that it wasn't unreasonably slippery as a matter of law, or that he should have taken care of it if it was as a matter of law. We're arguing that there is no evidence that it was unreasonably slippery. Of course, people, everyone knows that ice is slippery. There are many ways in which Mr. Lartz could have introduced proof that it was unreasonably slippery. First of all, he himself could have said that this was much more slippery than the normal condition. He didn't say that. He said this was part of his normal job. Your time has expired. All right. Thank you. Thank you. Five seconds. This will take 15 seconds. Okay. The question about ice versus slush. If you look at the Crowley Occurrence Report, which was filled out on the day of the accident by Master Attaway, it's dated 10-4-01. It's written in, Joe slipped on icy deck. It doesn't say anything about slush. It refers to ice. I also want to refer the Court to a 1923 Ninth Circuit case, Pan American Fisheries v. Hook, HOOF at 291F-306. And that case says that the master has a non-absolute, non-delegable duty to provide a safe place to live. Thank you. The case just argued is submitted for decision. The next case, United States v. Johnson, is submitted on the briefs, and it is so ordered. The next case, United States v. Dowd, is also submitted on the briefs, as is United States v. Coors. And United States v. Huebner, as is ordered, those cases are submitted.
judges: Schroeder, Graber, Fisher